IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

EMPLOYERS MUTUAL CASUALTY
COMPANY,                                                              PLAINTIFF,

VS.                                                    CIVIL ACTION NO. 4:07CV057-P-S

RLI INSURANCE COMPANY,                                                DEFENDANT.

## MEMORANDUM OPINION

These matters come before the court upon Defendant RLI's Motion for Summary Judgment Based on the Volunteer Payment Doctrine [32], Plaintiff Employers Mutual Casualty Company's Motion for Summary Judgment [56], and Defendant RLI's Motion for Summary Judgment Due to Cannon's Failure to Comply with RLI Policy Conditions [60]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule. Because the court concludes that it is bound by *Genesis Insurance Company v. Wasau Ins. Companies*, 343 F.3d 733 (5th Cir. (Miss.) 2003) to apply the volunteer payment doctrine against the plaintiff, the court concludes that Defendant RLI's first motion for summary judgment should be granted and that the other motions for summary judgment should be denied as moot.

### I. FACTUAL BACKGROUND[1]

Employers Mutual Casualty Company ("EMC") issued two policies to Cannon Chevrolet Oldsmobile Cadillac Nissan, Inc. which is owned by Michael J. Cannon: (1) a commercial

---

[1] The facts are drawn in a light most favorable to the plaintiff.

1

automobile policy providing $1,000,000 in liability coverage for each accident; and (2) a commercial umbrella policy providing $2,000,000 in coverage for each accident. Michael Cannon also purchased a personal umbrella policy from RLI.

On March 21, 2004 Cannon was involved in an automobile accident while driving his family to church in which the other driver, Gregory Warner, was killed. The wrongful death beneficiaries of Warner filed a lawsuit against the Dealership and Cannon individually. At the time of the accident, Cannon was operating a vehicle owned by his Dealership and covered by his commercial EMCC policies while acting in the course and scope of his employment.

Cannon gave notice of the accident to his insurance agent, the Clark Insurance Agency, on March 22, 2004. Clark had procured the EMC policies and the RLI personal umbrella policy on behalf of Cannon, and was an authorized agent for EMC at this time. Clark notified EMC of the accident.

RLI disputes that Clark was an agent for RLI and thus argues that giving notice to Clark Insurance Agency was ineffective notice to RLI of the accident.

Before any depositions were taken, EMC settled the wrongful death suit for $1.9 million, contributing the policy limits of EMC's primary policy and an additional $900,000 from EMC's commercial umbrella policy. Seven months after this settlement, EMC sent a demand to RLI claiming RLI was responsible for its "pro rata share" of the settlement payments that were in excess of EMC's primary policy ($1million), to be shared with EMC's $2 million umbrella policy.

RLI contends that the demand letter was the first time RLI received notice that the accident occurred and that they were never able to investigate or participate in settlement negotiations. RLI argues that because it received no notice of the underlying action, and because EMC's settlement

2

was a voluntary payment, RLI is not required to pay.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present,

3

the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. Volunteer Payment Doctrine**

RLI's primary argument is that they cannot be liable to pay because of the volunteer payment doctrine – that is, since EMC voluntarily settled the underlying case before discovery had been completed, their payment cannot be said to have been compulsory and therefore RLI cannot be required to indemnify EMC for its payment. EMC disputes the applicability of the doctrine, arguing

4

essentially that the doctrine does not apply to subrogation actions and that even if it did, RLI is liable because EMC's insured was legally liable to pay the settlement, the payment was paid under compulsion, and the amount was reasonable. EMC cites *Keys v. Rehabilitation Centers, Inc.*, 574 So.2d 579, 584 (Miss. 1990) for the proposition that under Mississippi law, whether a party paid under compulsion requires a determination of whether, objectively, the party was more likely than not to be found legally liable in the underlying action.

After considering the briefs and conducting independent research, the court concludes that EMC has cited no authority for the proposition that the volunteer doctrine does not apply to subrogation actions. The court also concludes that *Keys* does not stand for the proposition that a payment is compulsory if the party was more likely than not to be found legally liable in the underlying action.

In any event, this court is bound by *Genesis Insurance Company v. Wasau Ins. Companies*, 343 F.3d 733 (5th Cir. (Miss.) 2003) in this matter. Therefore, the court will discuss the *Genesis* case at length.

The volunteer doctrine is a common-law construct that has been consistently followed in Mississippi. *Genesis*, 343 F.3d at 736. The rule establishes that:

> [A] voluntary payment cannot be recovered back and a voluntary payment within the meaning of this rule is a payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand.

*Genesis*, 343 F.3d at 736 (citing *McDaniel Bros. Constr. Co., Inc. v. Burk-Hallman Co.*, 175 So.2d 603, 605 (Miss. 1965); *Presley v. American Guarantee & Liability Ins. Co.*, 116 So.2d 410, 416 (Miss. 1959); *McLean v. Love*, 157 So. 361, 362 (Miss. 1934)).

In *Genesis*, Baker, a guest at the President Casino in Biloxi, was struck by a casino shuttle bus. President was insured under a business auto policy from Wausau. President immediately informed Wausau who in turn retained a local adjuster to investigate. Ultimately, Baker filed suit in state court against the casino and its shuttle driver, alleging negligence and Wausau hired attorney to defend the casino. The trial court approved Baker's motion to amend the complaint to include an additional count of premise liability. President casino then notified its comprehensive general liability insurer, Genesis, who hired an attorney. Genesis filed a declaratory action in federal court seeking a declaration that the Wausau policy covers all the allegations in the underlying action, with the Genesis policy providing only excess insurance over and above the $1 million primary coverage afforded by the Wausau policy.

Defendants in the state court action stipulated to liability, leaving only the issue of damages to the jury. Defendants thereafter settled the underlying action for $400,000. Wausau paid $200,000 and Genesis paid $200,000. Genesis and the casino contended that their $200,000 payment was made with the understanding that all parties reserved their right to seek reimbursement from one another.

In the federal declaratory action, Genesis and the casino filed a joint motion for summary judgment, asserting that the language of the Wausau policy provides coverage for the entirety of the Baker claim. Wausau filed a cross-motion for summary judgment, arguing that President and Genesis voluntarily proffered payment for the Baker settlement, and were therefore barred from seeking reimbursement under the voluntary payment doctrine. The district court granted Wausau's motion, concluding that under the voluntary payment doctrine, President and Genesis gave up their claims against Wausau when they voluntarily settled the Baker litigation.

Though the Fifth Circuit in *Genesis* vacated the district court's order granting summary

6

judgment and remanded the case for further proceedings, the Court did so because it concluded that there was a factual question as to whether the two insurers had agreed to reserve their rights after the settlement. *Genesis*, 343 F.3d at 736 ("Because we are convinced that an issue of fact remains as to whether there was an agreement between the parties to subsequently litigate the coverage issue, we reverse the district court's grant of summary judgment."). Notwithstanding the result, the Fifth Circuit concluded that the volunteer payment doctrine would be applicable to prevent Genesis from recovering the proceeds it contributed to the settlement of the state action in the event it were found that Genesis and Wausau did not have an agreement to reserve their rights after settlement. In this regard, the Court concluded:

> While Wausau's questionable conduct placed Genesis in an unenviable position, the law does not permit us to grant Genesis and President immunity from the volunteer doctrine on the grounds that their settlement payments were compelled. Wausau, President, and Genesis recognized that there was little chance that a jury would not find in favor of Baker after viewing a videotape that showed President's shuttle bus hitting Baker as she walked onto the crosswalk. The liability stipulation, and subsequent settlement, were borne not so much of Wausau's compulsion, but of strategy (albeit influenced by Wausau's actions).

*Genesis*, 343 F.3d at 740. Perhaps more instructive on this issue, the Fifth Circuit wrote in Footnote 2:

> Genesis contends that it (and thereby President, through the self-insured retention addendum) was legally obligated to contribute to the settlement citing *Keys v. Rehabilitation Centers, Inc.*, 574 So.2d 579 (Miss. 1990). **The argument is untenable**. At a minimum, the fact that the appellants beseech this court, in the same petition, to make a legal determination that Genesis's policy did *not* obligate them to contribute to the settlement certainly puts their claim to the contrary with respect to the volunteer doctrine in doubt. At the time of the settlement, no determination had been made regarding the legal liability of Genesis in the Baker litigation. All that had been *voluntarily* stipulated to was the liability of Wausau *and/or* Genesis. Genesis filed this declaratory judgment action expressly for the purpose of determining its uncertain legal liability. **Genesis was accordingly no more legally obligated to contribute to a settlement than the parties in *Armco v. Southern Rock, Inc.* and**

7

> ***Rowe v. Union Cent. Life Ins. Co.*, which were found to have made their payments voluntarily.** See Armco, 696 F.2d 410 (5th Cir.1983); Rowe, 194 Miss. 328, 12 So.2d 431 (1942). Genesis and President do not contend that were laboring under a mistake of fact when they made their settlement payments, nor do they claim to have been fraudulently induced to do so.

*Genesis*, 343 F.3d at 738, n. 2 (emphasis added).

Regarding the volunteer payment doctrine, the Court observed that "[t]he meaning of compulsion with respect to the voluntary payment doctrine is not well-defined in Mississippi. There are only a handful of Mississippi state cases that discuss the voluntary payment doctrine at any length, and neither the parties nor independent research has revealed any that have been decided within the past twenty years." *Genesis*, 343 F.3d at 738-39. The Court went on to consult case law from other jurisdictions and, quoting 66 Am.Jur.2d § 109, wrote:

> The general rule guiding the determination of whether a payment was made voluntarily or not can be stated as follows: where a person pays an illegal demand, with full knowledge of all the facts which render the demand illegal, without an *immediate and urgent necessity to pay,* unless it is to release his or her person or property from detention or to prevent an immediate seizure of his or her person or property, the payment is voluntary. It is only when, in an emergency for which a person is not responsible, the person is compelled to meet an illegal exaction to protect his or her business interest that he or she may recover the payment, **but if, with knowledge of the facts, that person voluntarily takes the risk of encountering the emergency, the payment is voluntary and may not be recovered**.

*Genesis*, 343 F.3d at 739 (quoting 66 Am.Jur.2d § 109) (emphasis added).

The Fifth Circuit in *Genesis* concluded that President and Genesis' claim of compulsion in payment failed to meet this standard in two ways: first, the dilemma of whether to contribute to the settlement or to allow the Baker case to go to trial "lacks the sense of immediacy often accompanied by compelled payments"; and second, "the stakes, in the event that President and Genesis refused

8

to participate in the settlement, were of an insufficiently dire magnitude to justify finding that their settlement contributions were compelled." *Genesis*, 343 F.3d at 739-40.

Accordingly, after considering the parties' arguments in light of *Genesis*, the court concludes that EMC's settlement was voluntary and not compulsory. Therefore, the volunteer payment doctrine shields RLI from having to indemnify EMC with their "pro rata share" of $600,000. The court notes that although there is a factual dispute as to whether Clark Insurance Company was in fact an agent of RLI, this issue does not come to bear on the applicability of the volunteer payment doctrine.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendant RLI's Motion for Summary Judgment Based on the Volunteer Payment Doctrine [32] should be granted. Thus, the plaintiff's claims against the defendant should be dismissed with prejudice and Plaintiff Employers Mutual Casualty Company's Motion for Summary Judgment [56] and Defendant RLI's Motion for Summary Judgment Due to Cannon's Failure to Comply with RLI Policy Conditions [60] should be denied as moot. Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of September 17, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE